Lee, J.
The first question to be considered in this cause is that arising upon the demurrer to the plea in abatement of a former action pending, filed by the defendant. It is contended that this plea is defective because it fails to aver that the former action was still pending at the time of the plea pleaded, and in lieu thereof avers that it was pending at the time of the emanation of the writ in this cause. Whether a plea of this character must aver the continued pendency of the former action at the time of the plea pleaded, or will be good if it aver the pendency at the time of the commencemet of the second suit, is a question that has given rise to some diversity of opinion and decision. In 1 Bacon’s Ab. (edition of 1846,) p. 28, title “ Abatement,” letter M, it is laid down that it is not necessaiy that both actions should be pending at the time of the defendant’s pleading in abatement; for if there was a writ in being at the time of suing out the second, it is plain that the second was vexatious and ill ab initio. In the case of Parker v. Calcord, 2 New Hampshire R. 36, the judge delivering the opinion of the court, says that the second suit is vexatious if the first one were pending at the time the second was commenced, that is if both existed simul et semel, and that all pleas except payment and others founded on something which occurred after the cause of action, refer to the state of things at the origin of the suit; and it was accordingly held that the pendency of a prior suit *624 may be pleaded, in abatement though it were discontinued before the plea was pleaded. The same doctrine is declared in the case of Commonwealth v. Churchill, 5 Mass. R. 174, in which Ch. J. Parsons delivered the opinion of the court. He refers to Sparry’s case, 5 Coke 61, and to a case in the 39 Henry 6, pl. 16. The same principle is perhaps to be inferred from Combe v. Pitt, 3 Burr, R. 1423 ; White v. Smith, 4 Hill 166, and other cases.
On the other hand, the doctrine that the former action must be pending and so averred at the time of the plea pleaded, is supported by numerous and strong authorities. Bezaliel Knight’s case, 2 Ld. Raym. 1014; Hawk. P. C. Lib. 2, ch. 26, § 63; Green v. Watts, 1 Ld. Raym. 274; Bishop v. Powell, 6 T. R. 616; Clifford v. Coney, 1 Mass. R. 495; Marston v. Lawrence, 1. John. Ca. 397 ; Sellon’s Prac. 44; Toland v. Tichenor, 3 Rawle’s R. 320; Com. Dig. Abatement, H, 24. And it is to be observed, that the remark of Ch. J. Parsons in Commonwealth v. Churchill, 5 Mass. R. 174, that it is not necessary that the plea should aver that the former action was pending at the time of plea pleaded was a mere obiter dictum, because the question did not arise in the case. The plea in that case did allege (as I understand the report of it) that the former action was still pending; and after the plea had been entered, the plaintiff in the former action became nonsuit, and the replication to the plea set up this nonsuit as an answer to the plea. On demurrer this replication was held bad; and all that this case can be said to decide is, that after plea pleaded, the dismissal of the former suit will not save the writ. And this is all that is decided in the case of Frogg v. Long, 3 Dand’s R. 157. It will be found too that in the case from the year books cited in that case, (39 Henry VI, 12, pl. 16,) two of the judges, Moile and Ashton, held that the former writ must be still pending at the time of the plea, or it will not abate the second.
*625 The precedent of pleas in abatement of a/wter action pendent, to be found in the books, contain the averment that the former writ is still pending. 3 Chit. Pl. (Phil. ed. of 1828,) 903; Lill. Ent. 2, 7, 11; 1 Went. Pl. 8 n; Lutw. 33 ; Story’s Pl. 120, 121. And although as it has been said forms do not make the law, yet they are persuasive evidence of what the law is.
In this conflict of authorities perhaps equally balanced, as the point has never yet been decided in this court, the court should adopt the rule that appears to be most reasonable and convenient. The principle on which this plea rests is expressed in the maxim nemo bis vexari debet pro una et eadem causa. But if at the time of the plea pleaded, the former suit have been discontinued, the vexation has ceased, and (as said by the two judges in the case from the year book before referred to,) the mischief is at an end, and the writ shall not abate. And in such a case it would seem to be useless and unnecessary to turn the plaintiff around to another action, when at the time of the plea pleaded the pending action was as free from the objection of the pendency of a former suit as the new action itself would be when it should be instituted. Cases may arise too in which the plaintiff having brought one suit, might find it necessary in order to render his cause of action effectual, to bring a second before he could dismiss the first either at rules or in court. And if he should take care to dismiss the former before the defendant pleads in abatement it would be unreasonable that his writ should abate because he could not dismiss his first suit before it was necessary to take out his second writ, although he did so before the plea pleaded.
A plea of this character not going to the merits of the case, seeking merely to delay the administration of justice in the particular case, should not be favored by the court. And upon the whole it would seem that the best, most reasonable and convenient rule would *626 be that the defendant should allege in his plea the pendency of the former action at the time of pleading, and to hold it insufficient if it only allege its pendency at the time of the writ purchased. In this view the Circuit court did not err in holding the plea filed in this case to be insufficient.
The declaration filed in the case consisted of two counts, to the first of .which the defendant, after his plea in abatement had been held for naught, filed á general demurrer, which was overruled by the court. Each of these counts was a perfect declaration in itself, a separate and entire debt being claimed in each. The first count claimed of all the defendants the sum of 600 dollars and *75 cents, with interest on 600 dollars part thereof, from the 6th day of September 1845 till paid, which it alleged they owed and unjustly detained. It then alleged that the defendants Tyler and Hill made and subscribed a negotiable note, by which “they promised'to pay within four months after the said date” (to wit, the 3d of May 1845 the date of the note,) “to the said John Archer or order, without offset, negotiable and payable at the American Exchange Bank of Hew York, for value received.” It then alleged the endorsement of the note by Archer to the plaintiff, its due presentment for payment at said bank, and that it was duly protested for nonpayment; and that the plaintiff was compelled to pay the sum of 75 cents for costs of protest. By reason whereof it. claimed that right and action had accrued to the plaintiff to recover of the defendants the said sum of 600 dollars and the sum of 75 cents, with interest on the said sum of 600 dollars as before demanded.
It is true that in describing the note, the sum for which it was given was (no doubt inadvertently) omitted; still upon the face of the whole count, .enough, I think, can be seen to supply this omission. The count claims a debt of 600 dollars and 75 cents *627 as due from the defendants to the plaintiff: Proceeding to show how so due, it alleges that two of the defendants made a negotiable note payable to the other, dated on the 3d day of May 1845, to fall due four months after date; that said note was delivered to the defendant Archer, and by him endorsed to the plaintiff; that it was duly protested for nonpayment, and that 75 cents was paid by the plaintiff for costs of protest. The time from which interest was claimed on 600 dollars was the 6th day of September 1845, the day upon which, with the usual days of grace added to the time for which the note had to run, the note would become absolutely due. I think, therefore, one cannot wink so hard as not to see that 600 dollars was the sum named in the note. The note and the costs of its protest were the two elements of the plaintiff’s demand of 600 dollars and seventy-five cents: those costs were alleged to be 75 cents; the remainder or 600 dollars was necessarily the amount for which the note was given. Considering this demurrer to this count, according to the rule prescribed by § 101 of chap. 28 of the Revised Code of 1819, (1 Rev. Code 511,) I think it was properly overruled, because the omission in the description of the note of the sum named was so supplied by the other allegations of the count as not to be of a matter so essential to the action that judgment, according to law and the very right of the case, could not be given.
After the overruling of this demurrer the defendant Archer pleaded nil debet; and issue was joined thereon. He filed, however, with his plea no affidavit denying his endorsement of the note described in the declaration. At the trial of the case, a note corresponding with that described in the declaration with the name of the defendant Archer endorsed thereon, was read in evidence without objection; and the plaintiff then proved a demand of the amount thereof at the place *628 of payment, and that it was protested for nonpayment. Evidence was then given tending to show that the note in question had been a blank printed form of the kind usually kept for the use of those doing business at the office of discount and deposit of the Exchange Bank of Virginia at Petersburg, and that the printed words “ office of discount and deposit of the,” and the printed words “ Virginia at Petersburg,” had been erased or stricken out with a pen, and in lieu thereof such words written as to make the note payable at the American Exchange Bank of New York. And thereupon the defendant moved the court to instruct the jury that it was incumbent on the plaintiff to prove that the alterations apparent on the face of the note were made before the endorsement of the same by the defendant, or if made afterwards, that they were consented to by the defendant when made, or afterwards ratified by him with knowledge that they had been so made. This instruction the court refused to give, and the defendant excepted; and the refusal of the court to give this instructien is assigned as one ground of error in the said judgment.
It is contended by the counsel for the plaintiff in error, that at common law although if an interlineation appear in a deed and there be no evidence to show how or when it was made, it will be presumed to have been made before the execution, yet that with respect to bills, notes and other negotiable securities the rule is different; and that if an instrument of that character appear on the face to have been altered, it is for the holder to prove, and not for the defendant to disprove, that the circumstances of the alteration were such as to render it still valid and available. They also insist that the alteration of the place of payment of a note or bill is so material as to cast this burden on the holder. But I do not deem it material to enter into the consideration of these questions, because it *629 appears to me that the plaintiff in error had not placed himself in a condition to raise them on the trial before the jury. The act of February 5, 1828, (Supp. Rev. Code 1819, p. 265,) provides in effect that in an action upon the endorsement of a promissory note, and in which the declaration alleges that the defendant endorsed the same and subscribed his name thereto, such endorsement with the name thereto subscribed shall be deemed and taken to be genuine, and the name to have been subscribed by the person charged therewith, without proof of the handwriting, unless the defendant shall file with his plea an affidavit that the said endorsement was not made by the person charged therewith. The declaration in this case alleges that the plaintiff in error endorsed a note which was described as payable at the American Exchange Bank of New York. If in point of fact the note which he did endorse was a note payable at the office of the Exchange Bank of Virginia at Petersburg, he could with perfect safety and propriety make the affidavit that he did not endorse any such note as the one described in the declaration, and the holder would then undoubtedly be put to proof of the endorsement of the note described in the declaration ; and in making that out he would be perhaps required, (though upon this point I mean to express no opinion,) to explain the alteration apparent on the face of the note. If the holder were required to give such an explanation in proof without an affidavit filed, and failed to give it, the effect would be precisely the same as if he had been required to prove the execution of the endorsement and failed so to do. In either case the plaintiff would fail in his action, not being able to give the note in evidence to the jury. By the improper and unauthorized alteration the instrument would have been vitiated and its genuineness destroyed. Why should the defendant be permitted to put the genuineness of the instrument in issue in this *630 form without the affidavit any more than if he sought f° so by raising a question as to its actual execution?
It is to be observed that in the case of a defendant c]iarge¿ with having made or endorsed the note in question, and having subscribed his name to the’note or endorsement, the affidavit which he is to make in order to put the plaintiff to proof of the genuineness of the instrument, is, that the said note or endorsement was not made by him as charged in the declaration. It is not sufficient to make oath that the name subscribed is not his handwriting. For if so, a party who had caused a note to be signed with his name, and in his presence, by a third person, might by such an affidavit raise a question entirely immaterial. But when he files the proper affidavit denying that he made the note, the plaintiff is put to proof of its genuineness, either by proving the handwriting to be his, or that it was signed in his name by another who was thereto properly authorized. I think, therefore, notwithstanding the title of the act in question, and some expressions found in it which I think may be regarded as surplusage, it was the intention of the legislature by the provisions of this act, in a case like the present, in which the endorsement alleged is accompanied by the proper averments, that the instrument should go to the jury as the proper instrument of the defendant, without any proof of the handwriting, or that it was executed by the defendant, or any other proof that might be required if the genuineness of the paper described in the declaration were put in issue by the proper affidavit. “
This opinion may possibly seem opposed to the views of the judge whose opinion is given in the case of Shepherd, &c. v. Frys, 3 Gratt. 442; and certainly whenever I might find myself differing from that learned and able jurist, I should be disposed to think I must be in error, and to review my opinion with the utmost care and de *631 liberation. After all the consideration, however, I have been enabled to bestow upon the subject, I have not been able to bring my mind to a different conclusion. And it is to be observed that in the case of Shepherd, &c. v. Frys, the question did not arise, because the declaration did not aver that the note in question was made or subscribed by the defendants. And the judge, in his opinion, says expressly, that the object of the act was to relieve the plaintiff'from the necessity of proving at the trial the genuineness of the instrument on which the action is founded; and that it therefore precludes the defendant from controverting its genuineness unless denied by affidaxit filed with the plea. And he also says that the defendant is called on to deny by affidavit or waive the denial of the genuineness of the instrument. And in the latter case* the effect of the act is to put the paper in proof before the jury for as much as it is. worth upon its face. Now if the genuineness of an instrument depends, as it seems to me it must, not only upon its due execution by the party charged, but also upon its having remained unaltered (in any material particular at least,) after its execution, the language of the judge would seem to be broad enough to require an affidavit for the purpose of raising an issue upon the latter point as well as upon the question of due execution.
The view I have taken of this subject renders it unnecessary to consider the correctness of the instruction given to the jury on the motion of the plaintiff. Because how erroneous soever that instruction may have been, still it did not and could not prejudice the defendant, if the erasure and interlineation on the face of the note had not been drawn into question by the pleadings in the cause.
I am of opinion to affirm the judgment.
Moncure and Samuels, Js. concurred in the opinion of Lee, J.